**WO**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| National Fire Insurance Company of Hartford, *et al.*; | No. CV-11-01220-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Richard Jay Lewis, M.D., *et al.*; | |
| Defendants. | |
| Advanced Cardiac Specialists, Chartered, *et al.*, | |
| Third-Party Plaintiffs, | |
| v. | |
| Medical Protective Company, *et al.*, | |
| Third-Party Defendants. | |
| Medical Protective Company, *et al.*, | |
| Third-Party Counterclaimants, | |
| v. | |
| Advanced Cardiac Specialists, Chartered, *et al.*, | |
| Third-Party Counterdefendants. | |

Third-party Defendant/Third-party Counterclaimant Medical Protective Company has filed a Motion for Entry of Partial Final Judgment. (Doc. 298.) The Larsen Defendants opposed the Motion, and, after consideration of the submissions, the Court denies Medical Protective's Motion.[1]

**BACKGROUND**

The Parties in this insurance coverage dispute filed several Motions for Summary Judgment that the Court resolved on September 28, 2012. (Doc. 269.) The coverage dispute centers on the actions of Defendant Dr. Richard J. Lewis. Several Defendants (the "Underlying Plaintiffs") claim in the underlying state court case that Dr. Lewis, among other things, inappropriately viewed and sexually assaulted them under the guise of treatment. The Underlying Plaintiffs have also brought claims against Defendants Advanced Cardiac Specialists ("ACS"), Dr. Robert Siegel, and Dr. Barbara Barker-Siegel on various theories of vicarious and direct liability for Dr. Lewis's alleged activities. Medical Protective issued a professional liability policy that provided coverage for ACS, Dr. Siegel, and Dr. Lewis.

The purpose of this suit is to determine whether various insurers must provide coverage for the alleged misconduct of Dr. Lewis. In its Motion for Partial Summary Judgment, Medical Protective argued that it did not have to cover ACS and Dr. Siegel for their potential liability principally because (1) none of the alleged sexual misconduct qualified as a "health care occurrence," "professional services," or "treatment" within the meaning of the policy; and (2) even if those activities were covered, several of the policy's "General Exclusions" applied to prevent coverage. (Doc. 136.)[2] Medical

---

[1] The Parties' requests for oral argument are denied because they have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] Other claims were made, but the Court focuses on these to clarify the issues in this Motion.

- 2 -

Protective's policy had two separate agreements: a physicians agreement and a corporate agreement. The Court determined that Medical Protective had no duty to defend or indemnify Dr. Lewis, ACS, Dr. Siegel, or Dr. Barbara Siegel under the physicians agreement because certain exceptions applied. (Doc. 269 at 19-20.) The Court then concluded that the corporate agreement covered the liability of ACS and Dr. Siegel for some of Dr. Lewis's activities, but found a factual issue as to others. (*Id.* at 20-21.) After examining the language of the corporate policy, the Court rejected Medical Protective's argument that the "General Exclusions" applied to bar any liability. (*Id.*at 21-22.) It concluded:

> Under the terms of the corporate agreement, Medical Protective has a duty to defend and indemnify ACS and Dr. Siegel for claims by Underlying Plaintiffs Larsen and Piper that the ACS Defendants are vicariously liable for assault and battery, medical negligence, intentional or negligent infliction of emotional distress, and invasion of privacy arising out of Dr. Lewis's alleged inappropriate sexual contact with the breasts. A genuine issue of fact remains as to coverage for other allegations of inappropriate touching, which means Medical Protective must continue to defend the entire suit. . . . Medical Protective has a duty to defend and indemnify ACS and Dr. Siegel against the Underlying Plaintiffs' derivative negligence claims arising out of Dr. Lewis's inappropriate touching of the breasts. And because a genuine issue of fact remains as to coverage for the remaining claims of inappropriate contact, Medical Protective must continue to defend the ACS Defendants against the entire suit.

(*Id.* at 34-35.)

Medical Protective moved for reconsideration of the Court's ruling that the General Exclusions did not apply to the liability of ACS and Dr. Siegel for Dr. Lewis's alleged conduct. (Doc. 271.) The Court denied that Motion under Rule 59(e) and L.R. Civ. 7.2(g)(1). (Doc. 286.) Medical Protective then filed a Motion for Leave, again asking this Court to reconsider its decision on the "General Exclusions." (Doc. 287.) The Court reaffirmed that Medical Protective's Motion did not meet the standards of Rule 59(e) and L.R. Civ. 7.2(g)(1). (Doc. 293.) Medical Protective now asks this Court to enter

- 3 -

partial final judgment on its holding that the General Exclusions in the corporate agreement do not apply to the potential liability of ACS and Dr. Siegel.

## DISCUSSION

I.  **LEGAL FRAMEWORK**

Rule 54(b) of the Federal Rules of Civil Procedure provides: "When an action presents more than one claim for relief—whether as a claim, counterclaim, cross-claim, or third-party claim—or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."

"A district court must first determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7 (1980) (citations omitted). "[F]or Rule 54(b) to apply, 'claims must be multiple and at least one must have been adjudicated finally.'" *Ariz. State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1039 (9th Cir. 1991) (quoting *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1524 (9th Cir.1987)). In other words, "[a] decision is final under 28 U.S.C. § 1291 if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988)).

In the context of Rule 54(b), "claim" has a specific meaning. "[A] complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief." *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n.4 (1976). It is not synonymous with "argument" or "theory." *See CMAX, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695, 697 (9th Cir. 1961) ("The word 'claim' in

- 4 -

Rule 54(b) refers to a set of facts giving rise to legal rights in the claimant, not the legal theories of recovery based upon those facts.")

Finality is not the end of the inquiry, however:

> Once having found finality, the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a "dispatcher." It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised "in the interest of sound judicial administration."

> Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments . . . a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals."

*Id.* at 7–8.

Consequently, entering judgment under Rule 54(b) "must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants" in obtaining an early final judgment for some claims. *Frank Briscoe Co., Inc. v. Morrison–Knudsen Co., Inc.*, 776 F.2d 1414, 1416 (9th Cir. 1985) (citation omitted). The Court must consider whether the appeals court "will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court." *Id.* (citation omitted). Similar legal or factual issues "weigh heavily against entry of judgment under the rule." *Id.* (citation omitted).

## II.     ANALYSIS

Medical Protective first argues that the Court's ruling on the applicability of the General Exclusions is final because that determination was not disturbed on

reconsideration and the applicability of the General Exclusions can be considered a separate claim for purposes of a Rule 54(b) Motion. That argument stretches the meaning of the word "claim" in Rule 54(b) to encompass any "argument." Medical Protective's claim in this case is a request for declaratory relief in the form of an order that it is under no obligation to indemnify or defend its insureds under the professional liability policy. (Doc. 59 ¶ 45 ("Based on the allegations in the Underlying Complaints, no coverage exists for the claims based upon the Medical Protective Policy's terms, insuring clause, conditions, exclusions, definitions, and endorsements.").) That is the claim with respect to Medical Protective.

At the summary judgment stage, Medical Protective advanced many theories why its policy did not provide coverage for the claims in the underlying lawsuits: the alleged acts of Dr. Lewis were not within the scope of the policy, certain of the Underlying Plaintiffs' claims did not arise during the claims period, certain exclusions forbade coverage for various acts, and so forth. The Court accepted and rejected some of Medical Protective's arguments and made the findings described above.

But those were all arguments on the same claim. The claim in this case—the scope of Medical Protective's coverage—remains at issue. While "[t]he Rule 54(b) claims do not have to be separate from and independent of the remaining claims" as a factual matter, *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 468 (9th Cir. 1987), there must be more than one claim at issue to trigger Rule 54(b). That is not the case in this lawsuit. There are many arguments and parties, but the specific claim singular. It would be an abuse of Rule 54(b) to allow a party to appeal piecemeal the Court's disposition of each argument on a single claim. Rule 54(b) instead requires final adjudication of a claim before certification becomes available as an option.

Even if the portion of the Court's resolution of Medical Protective's Motion for Partial Summary Judgment that bears on the application of the General Exclusions was somehow a final disposition of a separate claim, Medical Protective has not shown that

there is not just reason for delay. As this Court ruled on Defendant Lexington Insurance Company's similar request for entry of final judgment, "[s]everal aspects of the coverage dispute in this case remain live . . . . Entry of final judgment on Lexington's claims would run the substantial risk of piecemeal appellate litigation of the coverage claims. As the course of this complex insurance coverage action has shown, there are numerous interrelated questions involved." (Doc. 308 at 2.) While Medical Protective is correct that evaluation of the "General Exclusions" is largely severable from the remaining claims, there is still some overlap. Given the complexity of this case and the numerous moving parts, granting Medical Protective's Motion would surely result in the very piecemeal litigation Rule 54(b) was designed to avoid. The discovery in this case is currently scheduled to run into 2014. (Doc. 285.) Given the Ninth Circuit's heavy caseload, certification would further drag out and complicate an already long-running and complicated case.

## CONCLUSION

Medical Protective has not demonstrated that this Court's disposition of Medical Protective's "General Exclusions" argument is final. Furthermore, even if it was, certification of final judgment would not be in the interests of judicial economy.

**IT IS THEREFORE ORDERED** that Medical Protective's request for entry of final judgment under Rule 54(b) (Doc. 298) is **DENIED.**

Dated this 4th day of April, 2012.

_____
G. Murray Snow
United States District Judge